UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRUCE BURKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:10-cv-1064 (AJT/TRJ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b). Presently before the Court are cross-motions for summary judgment with respect to the adequacy of the procedures employed by defendant Experian Information Solutions Inc. ("Experian"), a CRA, that failed to detect and correct misinformation that was reported to it by one of plaintiff's former creditors. In deciding these motions, the Court must consider the extent to which a CRA must in fact investigate the accuracy of an underlying disputed debt between a consumer and a creditor as part of its statutory obligation (1) to use "reasonable procedures to assure maximum possible accuracy of the information" in its credit reports under 15 U.S.C. §

1

1681e(b); and (2) to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" when information is challenged by a consumer under 15 U.S.C. § 1681i(a)(1)(A).

## I.   BACKGROUND

Based on the record before the Court, the following are the operative facts for the purposes of the pending motions.

In December 2008, plaintiff Bruce Burke ("Burke") sued Litton Loan Servicing LP ("Litton") for violations of the federal Truth in Lending Act in connection with a refinanced loan on his primary residence. Compl., ¶ 4. In November 2009, he entered into a settlement with Litton, which "eliminated" plaintiff's debt in connection with the mortgage "and required Litton ... to delete the trade line" associated with the mortgage on plaintiff's credit report. Pltf.'s Mem. in Supp. of Mot. for Summ. J. ("MSJ"), Statement of Undisputed Facts ("SOUF"), ¶ 1; *see also* Compl., ¶ 7 (explaining that "As part of the resolution of the case with Litton, [Burke] deeded his home back to Litton..."). The settlement agreement also contained a confidentiality provision. Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 1.

In January 2010, plaintiff obtained a copy of his credit report from Trans Union Corporation ("Trans Union") and discovered that the Litton entry and information relating to his mortgage remained on his credit report.[1] Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 2. On March 15, 2010, plaintiff sent a letter to Experian in which he stated that the Litton entry "should not appear on my credit report" and requested that the entry be removed from his credit report.

---

[1] While Trans Union and Equifax Corporation ("Equifax") are not parties to this action, plaintiff has represented to the Court that he filed separate suit(s) against Trans Union and Equifax and that those matters have now been settled.

2

Plaintiff also invited Experian to call him "[i]f you require any additional information from me related to this dispute," and provided a phone number by which Experian could do so. Pltf.'s Mem. in Supp. of MSJ, Ex. B. In response, Experian did not contact the plaintiff but rather sent an Automated Customer Dispute Verification ("ACDV") to Litton. Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 4. On March 25, 2010, Litton responded to Experian's ACDV and informed Experian that negative information regarding plaintiff's mortgage should remain, and told Experian to alter the account information to add an "original delinquency date." Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 7. Specifically, Litton responded that the account was past due in the amount of $41,335 as of December 2008, and that foreclosure proceedings had started. Def.'s Mem. in Supp. of MSJ, SOUF, ¶ 3 & Ex. B. Experian provided the results of its investigation to plaintiff through a report dated March 26, 2010. This report adopted the information reported by Litton, and reported a past due amount of $41,335. Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 8 & Ex. D.

In June 2010, Burke obtained another copy of his Experian credit report. This version of his Experian credit report indicated a past due and owing balance of $86,314. Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 9 & Ex. E. On June 21, 2010, plaintiff sent Experian a second letter in which he stated:

> On March 15, 2010 I sent you a letter disputing the reporting of the Litton Loan Account on my credit report ... Rather than delete the debt, you responded to me by telling me that the debt was reporting correctly. I can assure you that this debt is not reporting correctly and should be deleted. Litton Loan Servicing knows how it should report this debt and needs to be contacted directly about this particular trade line. I would like to provide you with more detail about why this debt should be deleted, but I cannot only Litton Loan can. Accordingly, I request that you fully investigate this matter with Litton and ask it why this should be deleted from my credit report.

Pltf.'s Mem. in Supp. of MSJ, Ex. F. Experian considered plaintiff's letter to be simply duplicative of his first dispute letter dated March 15, 2010, and therefore pursuant to corporate

3

policy, did not send another ACDV to Litton, or engage in any other investigation, after receiving the second dispute letter. Pltf.'s Mem. in Supp. of MSJ, SOUF, ¶ 12. Specifically, Experian's response to plaintiff stated:

> We have already investigated this information and the credit grantor has verified its accuracy ... Pursuant to Section 611(a)(3)(A) of the Fair Credit Reporting Act [15 U.S.C. § 1681i(a)(3)(A)] we will not be investigating your dispute again at this time. If you still believe the item is inaccurate, then we can add a statement of continued dispute to your personal credit report at your request, or you may wish to contact the credit grantor directly to resolve your issue. If you have additional relevant information (anything new that has occurred between you and the credit grantor or courts that should result in a change to the information appearing on your credit report, such as a letter from the creditor, a cancelled check or money order, billing statement, contact name of the credit grantor, letter from the IRS, proof from a court or county reporter, proof that bankruptcy was dismissed or discharged, etc.), that was not presented when you previously disputed the information, you may mail it to us and we will investigate your claim.

Def.'s Mem. in Supp. of MSJ, Ex. F.

Plaintiff did not respond to Experian's invitation to provide additional information or include a statement of continued dispute. Nevertheless, for the purposes of the instant motions, the parties agree that plaintiff's settlement agreement with Litton eliminated plaintiff's debt and required Litton to delete the trade line associated with the debt in plaintiff's credit report. There also appears to be no dispute for the purposes of the pending motions that the information about the Litton debt in plaintiff's Experian credit report was inaccurate.

On September 23, 2010, plaintiff filed a two count complaint against Experian. In Count I, plaintiff claims that Experian failed to conduct a reasonable investigation in response to plaintiff's dispute letters in violation of 15 U.S.C. § 1681i. In Count II, plaintiff claims that Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in plaintiff's credit report, in violation of 15 U.S.C. § 1681e(b).

4

On February 10, 2011, plaintiff filed a Motion for Partial Summary Judgment [Doc. No. 13] in which plaintiff sought partial summary judgment on the issue of whether Experian's refusal to conduct any additional investigation in response to plaintiff's second dispute letter was appropriate pursuant to 15 U.S.C. § 1681i(a)(3). In response, Experian filed a Cross Motion for Summary Judgment [Doc. No. 16] in which Experian seeks summary judgment as to both Counts I and II on the grounds that Experian's response to plaintiff's disputes was reasonable, that there are no triable issues of material fact as to damages, and that any damages were not caused by Experian. For the reasons stated below, the Court will deny both motions for summary judgment.

## II.   ANALYSIS

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Parties asserting that a fact cannot be or is genuinely disputed must comply with the requirements of Fed. R. Civ. P. 56(c) and Local Civ. R. 56(B).

### A. There is a triable issue of fact as to whether Experian's reinvestigation and procedures were reasonable

In his complaint, Burke: (1) alleges that by simply sending a ACDV to Litton in response to his first letter dated March 15, 2010, and then refusing to contact Litton further in response to his second letter dated June 21, 2010, Experian violated Section 1681i of the FCRA; and (2) generally alleges that Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information in plaintiff's credit report in violation of Section 1681e(b). In order to prevail on a claim under Section 1681e(b), a plaintiff must show, in addition to damages and causation, that (1) the credit report contains inaccuracies; and (2) the CRA did not use reasonable procedures in preparing the report. *See Dalton v. Capital Associated Indus.*, 257 F.3d 409, 415 (4th Cir. 2001) ("a consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy"). In order to prevail on a Section 1681i claim, a plaintiff must show (1) that he disputed the accuracy of an item in his or her credit file; (2) the CRA failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the CRA could have uncovered the inaccuracy. *See Cahlin v. Gen Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). As referenced above, there is no present dispute as to the inaccuracy of the Litton debt information in Burke's credit report; and the focus of this Court's analysis is the scope of Experian's legal obligations under the FCRA and whether there is a genuine issue of material fact concerning Experian's discharge *vel non* of those obligations as they pertain to its preparation of Burke's credit report.

In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very

high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A). Section 1681e(b) sets forth the CRAs' overall duty:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Section 1681i(a)(1)(A) sets forth the CRA's obligation whenever a consumer notifies a CRA that the consumer disputes the completeness or accuracy of information in the consumer's file. When a CRA receives such notification, the CRA is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file..." 15 U.S.C. § 1681i(a)(1)(A).[2]

Section 1681i(a)(3)(A) of the FCRA qualifies a CRA's obligation to conduct a "reinvestigation" in those circumstances where the CRA "reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of failure by a consumer to provide sufficient information to investigate the disputed information."[3] This qualification

---

[2] Section 1681i(a)(1)(A) provides in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly ... of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file ... before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

[3] Section 1681i(a)(3)(A) provides in pertinent part:

> [A] consumer reporting agency may terminate a reinvestigation of information disputed by a consumer ... if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of failure by a consumer to provide sufficient information to investigate the disputed information.

notwithstanding, the structure and text of the FCRA make clear that the obligation to follow "reasonable procedures to assure maximum possible accuracy" is a continuing obligation that extends to each report prepared by a CRA, including the report prepared in connection with the "reinvestigation" required once a consumer challenges the accuracy or the completeness of information in his file.

While neither Section 1681e(b) nor 1681i(a)(1)(A) uses the term "investigation," it is clear from their explicit requirements that the obligation to conduct an investigation or reinvestigation that is reasonable under the circumstances is central to Experian's duty of care under the FRCA. This conclusion flows from the plain meaning of both sections. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived..." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

Although the Fourth Circuit has not explicitly addressed a CRA's duties under the circumstances of this case, it has considered the need for and the meaning of an "investigation" under the FCRA. In this regard, the Fourth Circuit, with respect to a creditor's obligation to conduct an "investigation" under the FCRA, cited with approval the dictionary definitions of "investigation" as " [a] detailed inquiry or systematic examination" and a "searching inquiry" and then observed that "the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir.

2004). It also concluded that because the term "investigation" was used within the context of articulating a duty in the consumer dispute process outlined in the FCRA, "[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute - and ultimately, correct – inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *unreasonable* inquiries by creditors." *Id.* at 430-31 (emphasis in original). Significant for this case is that in reaching this conclusion, the Court of Appeals cited with approval cases from the Eleventh and Fifth Circuits involving a "reinvestigation" under the provisions of the FRCA applicable in this dispute. *Id.* at 431, citing *Cahlin*, 936 F.2d at 1160, and *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986).

Whether a CRA has satisfied its duty of care depends, of course, on the facts of each case and the conduct sufficient within one circumstance may be insufficient within another. For example, courts have found with respect to the initial collection of information that, absent reason to believe information from generally credible sources is inaccurate, a CRA is not required under Section 1681e(b) to go beyond its initial source of information to verify that information. *See, e.g., Henson v. CSC Credit Servs.*, 29 F.3d 280, 285-86 (7th Cir. 1994) ("Requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient" in the absence of a consumer dispute). However, once the accuracy of information is actually challenged by a consumer, the sufficiency of a CRA's conduct relative to its duty of care will be evaluated under a "balancing test" that weighs the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information, and this test becomes markedly more favorable to plaintiffs who have disputed the accuracy of the information in their credit reports. *See Johnson*, 357 F.3d at 432-33, citing with approval *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (collecting cases and

explaining that "[i]n short, when one goes from the § 1681e(b) investigation to the § 1681i(a) reinvestigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly. Judgment as a matter of law, even if appropriate on a § 1681e(b) claim, thus may not be warranted on a § 1681i(a) claim"); and *Henson*, 29 F.3d at 287.

Given the fact intensive nature of these inquiries, "[t]he issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question[] in the overwhelming majority of cases.'" *Dalton*, 257 F.3d at 416, quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). In determining whether a plaintiff has carried its burden to create a triable issue of fact with respect to reasonableness, "a plaintiff need only 'minimally present some evidence' of unreasonableness" to avoid summary judgment. *Dalton*, 257 F.3d at 416, quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984).

Burke has premised his case on both Experian's response to his first letter dated March 15, 2010, which triggered Experian's duty of reinvestigation under Section 1681i(a)(1)(A), and his second letter dated June 21, 2010, which Experian rejected as insufficient to trigger any additional reinvestigation. Experian seeks summary judgment based on the proposition that by sending the ACDV to Litton, without more, it discharged its duty of reinvestigation as a matter of law.[4] It likewise contends that because Burke's second letter did not provide additional information but only repeated the fact of his challenge to the presence of the account on his report, albeit with a greater liability reflected, it had no additional duty beyond its already discharged duty of reinvestigation. *See* 15 U.S.C. § 1681i(a)(3)(A). On the other hand, plaintiff

---

[4] *See* Def.'s Mem. in Supp. of MSJ, at p. 6, fn 2 ("There is no dispute that by contacting Litton via the A/CDV system in response to Plaintiff's First Letter [dated March 15, 2010], Experian fulfilled its obligations under the FCRA. The A/CDV process satisfies the FCRA's requirements of reasonable procedures to ensure maximum possible reporting as well as for reinvestigations under Section 1681i" ).

claims that Experian's failure to conduct any investigation in response to plaintiff's second dispute letter is, under the facts of this case, a violation of Section 1681i(a)(1)(A).

Under these circumstances, the Court cannot conclude as a matter of law that Experian did or did not satisfy its obligations under Sections 1681e(b) or 1681i(a)(1)(A). Given the purpose for which a reinvestigation was required, a fact finder could conclude that Experian had failed to conduct a reasonable investigation "to assure maximum possible accuracy" in Burke's credit report. Experian knew virtually nothing about that dispute, other than it existed; and Experian's use of an ACDV request to Litton did little to focus Litton on the nature of the dispute. In his March 15, 2010, letter to Experian, Burke plainly offered to provide additional information about the dispute when he stated, "If you require any additional information from me related to this dispute, please contact me" and provided his telephone number. Pltf.'s Mem. in Supp. of MSJ, Ex. B. Had Experian done so, it is certainly possible that Experian would have learned from Burke that there existed a settlement agreement between Litton and Burke that related to that dispute, even if Burke felt unable to disclose the substance of the settlement. The fact of that settlement could have been brought to Litton's attention by Experian. Likewise, in order "to assure maximum possible accuracy," Experian might have inquired about and learned of the identity of a person at Litton who was, in fact, familiar with Litton's settlement with Burke and to whom it would have been most appropriate to address Experian's inquiry concerning the accuracy of the information Litton had originally provided. Rather than engage in any of these activities, Experian did nothing more than send out a pro forma inquiry to Litton.

Likewise, Experian refused to do anything further as to Litton in response to Burke's second letter, which clearly put Experian on notice of a continuing dispute, even though Experian still had not identified the nature of the dispute and Litton's position with respect to the dispute. Moreover, the consumer reports that Experian prepared based on the responses it did

11

receive from Litton not only failed to indicate that the Litton account was disputed but also stated that the account was "verified," *see* Pltf.'s Mem in Supp. of MSJ, Exhs. D & E, something that could be read to mean that Experian confirmed that Burke in fact owed the amount stated, contrary to what Litton and Burke had agreed upon. *See Dalton*, 257 F.3d at 415 (a report is inaccurate not only when it is "patently incorrect" but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect"). While a fact finder may ultimately determine that Experian discharged its obligations under the particular circumstances of this case with respect to either or both of Burke's letters, or that Experian's responses and investigation were reasonable, this Court at this point cannot make those judgments as a matter of law.

Likewise, while a fact finder may ultimately determine that Experian failed to discharge its duty of reinvestigation by only sending the single ACDV to Litton, the Court cannot make that determination as a matter of law. Burke clearly had an obligation to provide relevant information to Experian; and a fact finder could conclude that Burke failed to provide any real information to Experian that described the nature of the dispute or why simply sending an ACDV would not be adequate, such that Experian acted reasonably under the circumstances.

In making these judgments concerning Experian's obligations under the FCRA, the Court is mindful that Burke's claims against Experian raise concerns about "collateral attacks" upon a CRA with respect to the merits of a legal dispute and that a CRA's role and legal obligations are different than those of a creditor in investigating and determining the merits of a dispute between a creditor and a consumer. *See Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008).[5] But in order to discharge its own obligations under the FCRA, as discussed above, a

---

[5] Other courts have also observed that "... a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or

CRA in the position Experian found itself is not required to resolve the underlying merits of a legal dispute. Rather, it is required to undertake a reasonable investigation to determine whether the disputed information it is receiving from a creditor is accurate or not, and to record accurately the current status of the debt or delete the debt based on the facts collected during that reasonable investigation. *See* 15 U.S.C. § 1681i(a)(1)(A); *see also Cahlin*, 936 F.2d at 1160 (explaining credit reporting agency is legally permitted to "exercise[] its independent professional judgment, based on full information, as to how a particular account should be reported on a credit report."). While this obligation to conduct a reasonable investigation may increase the cost and expense to a CRA, it is the necessary cost associated with discharging the congressionally mandated duties placed upon a company choosing to engage in a business that can have such a profound and lasting impact on consumers, and, in the majority of cases, such as this, it passes to the trier of fact to decide whether the CRA fulfilled its obligations.

---

furnisher, which 'stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Saunders*, and finding that plaintiff's failure to resolve her dispute with a furnisher of information was "no fault" of the credit reporting agencies). Likewise, other appellate courts have noted that the FCRA allows consumers "who are dissatisfied by a reinvestigation to file a brief explanatory statement to be reported along with the disputed item," and, "in this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *Carvalho*, 629 F.3d at 892; *see also Cahlin*, 936 F.2d at 1160, fn 23 (finding that, where consumer and credit reporting agency disagreed regarding the characterization of a debt that was the subject of a settlement agreement, "Congress provided a unique remedy for consumers to dispute how a particular dispute is characterized or interpreted in their credit report allowing them to enclose a statement as to their version of the dispute"). While the Court agrees with these observations, in this instance, the parties agree for the purposes of this motion that an inaccuracy existed and that plaintiff attempted to resolve his disputes with Litton directly, rendering this case distinct from the situations with which the *Carvalho* and *Cahlin* courts were confronted.

## B. There is a triable issue of fact as to whether plaintiff is entitled to damages for emotional distress caused by Experian

Experian also seeks summary judgment as to both Counts I and II on the grounds that plaintiff has not provided sufficient evidence of damages caused by Experian on which to base a claim. The Fourth Circuit has specifically affirmed awards of damages for emotional distress in FCRA cases. *See Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 503-07 (4th Cir. 2007) (affirming award of damages for emotional distress, but reducing the award from $245,000 to $150,000). In so doing, the Fourth Circuit expressly recognized that "a plaintiff's testimony can provide sufficient evidence to support an emotional distress award," but emphasized that plaintiff must "reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements." *Id.* at 503 (explaining plaintiffs must offer testimony that "'sufficiently articulate[s]' true 'demonstrable emotional distress.'").

The record before the Court contains a sufficient articulation of emotional distress to satisfy the standard enunciated by the Fourth Circuit. For example, plaintiff's interrogatory responses state:

> I lost sleep worrying about the issue, which made me tired at work. I lost my appetite, had upset stomach and was not eating properly due to the stress. It affected my relationship with my girlfriend and my mom ... My stress and anger level was escalating since I had been planning my own family and wanted to get a place for my fiancé and I to live. The anger, frustration, sleepless nights and upset stomach continued ... My anger and frustration grows each and every day that Experian refuses to do the right thing and get this trade line to report accurately ... Th[e] situation is embarrassing, humiliating and distressing. I could not pay for a decent wedding and honeymoon ... in the end of April, 2010, I went to the emergency room at Fairfax Hospital because I was having chest pains. I was admitted and stayed the night for observation. I was having heart attack type symptoms, but the doctors were unable to determine the cause. I believe the stress that I was experiencing related to Experian had some part in causing that event.

Def.'s Mem. in Supp. of MSJ, Ex. G, at pp. 13-16. Based on the record before this Court, the Court cannot conclude that there is no genuine issue of material fact pertaining to Burke's claim

for emotional distress based on Experian's actions, and Experian's motion for summary judgment on this basis will be denied as well.

## CONCLUSION

For the above reasons, plaintiff's Motion for Partial Summary Judgment [Doc. No. 13] and Experian's Cross Motion for Summary Judgment [Doc. No. 16] will be denied. An appropriate Order will follow.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 18, 2011